J-S46031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.L., F.L. AND L.L., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| A.A.M., | |
| Appellant | No. 530 MDA 2014 |

Appeal from the Order entered on February 25, 2014,
in the Court of Common Pleas of Franklin County,
Civil Division, at No.: 2013-1943

BEFORE: SHOGAN, LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED AUGUST 28, 2014**

A.A.M. ("Mother") appeals from the Order (hereinafter "Custody Order") awarding (1) shared legal custody of her son, M.M.-L. ("Child" – d.o.b. 11/17/07), to Mother and J.L. ("Father"); (2) primary physical custody to Father; and (3) partial physical custody to Mother, F.L. ("Paternal Grandfather"), and L.L. ("Paternal Grandmother") (collectively "Paternal Grandparents"). We vacate the Custody Order and remand for further proceedings.

The trial court set forth the procedural history of this appeal as follows:

> This matter arose by a Complaint for Custody, filed by [Father and Paternal Grandparents] on May 13, 2013. The parties attended a conciliation conference on August 2, 2013. [The trial c]ourt approved the recommendations of the Conciliatio[r], and a temporary custody [O]rder was entered on August 16, 2013. Under that [O]rder, Mother and Father had

shared legal custody, with Father having primary physical custody and Mother having custody one weekend per month. On September 11, 2013, Mother filed a Motion for Scheduling of a pre-trial conference. The matter proceeded to trial, which was held on February 12, 2014.

Trial Court Opinion, 4/15/14, at 2 (some capitalization omitted).

The trial court set forth the relevant testimony presented at the custody trial[1] as follows:

When [C]hild was born, Mother and Father lived with [C]hild at [Paternal Grandparents'] home in Chambersburg, Pennsylvania. [N.T., 2/12/14,] at 26. In February [] 2010, Mother moved out of that house and stayed with her mother in Chambersburg. *Id.* at 58-59. Mother then moved in with her grandmother in Fayetteville until June [] 2010. *Id.* at 59. During that time, the parties operated under a week-on, week-off custody schedule, each parent [having] alternating weeks with [C]hild. *Id.* at 59. Upon Mother securing an apartment in June, the parties continued to share custody on a weekly basis. *Id.*

In June [] 2011, Mother moved to Conneaut Lake, Pennsylvania, approximately 3.5 [to] 4 hours away from Chambersburg. *Id.* Mother did not seek to relocate with [C]hild, and a relocation petition was never filed with [the trial c]ourt. The reason for her relocation was that her boyfriend had obtained new employment in that area and had to move. *Id.* at 60. Mother and her boyfriend are the parents of a three[-]year[-]old child who lives with them. *Id.* at 61. Upon the move to Conneaut Lake, Mother attended school from September 2011 until May [] 2013, receiving an Associate's Degree as a medical assistant. *Id.* at 60. During this time, [C]hild continued to live with Father at [P]aternal [G]randparents' home. *Id.* at 61. Mother usually sees [C]hild once a month. *Id.* at 63.

---

[1] The trial court heard testimony from Father, Paternal Grandmother, Father's grandmother, Mother, Mother's boyfriend, and Child (*in camera*). We note that both Father and Paternal Grandparents appeared *pro se*, and Paternal Grandmother questioned several of the witnesses and raised objections during the course of the trial.

In January [] 2013, Father obtained employment … at [a factory located in Chambersburg. *Id.* at 8-10.] Father then began residing part-time with his girlfriend in Shippensburg, Pennsylvania, who was pregnant at the time. *Id.* at 7. The custody arrangement has been that Father gets [C]hild on weekends and any day he has off [] work. *Id.* Father works the second shift at [the factory], from 3:00 p.m. until approximately 1:00 a.m. *Id.* at 10. He calls [C]hild at [P]aternal [G]randparents' home twice a day. *Id.* Due to Father's work schedule, Father and [P]aternal [G]randparents have established a routine where [C]hild lives at [P]aternal [G]randparents' home during the week.

Trial Court Opinion, 4/15/14, at 3-4.

On February 24, 2014, the trial court orally set forth its findings and decision in open court on the record. The next day, the court entered the Custody Order, awarding, *inter alia*, (1) primary physical custody of Child to Father, with a provision that Paternal Grandparents could exercise partial physical custody during the periods of Father's physical custody;[2] (2) partial physical custody to Mother during the school year, in accordance with a schedule; and (3) primary physical custody to Mother during the summer, when Child is not in school.

Mother filed a Motion for Reconsideration, which the trial court denied. Thereafter, Mother timely filed a Notice of Appeal, along with a Concise

---

[2] Specifically, the Custody Order provided as follows: "Father shall have primary physical custody of [Child] during the school year. Father may permit [Child] to reside with [Paternal Grandfather] and [Paternal Grandmother] during the school week due to his current work schedule, but shall transition to another work schedule if available so that [Child] may reside with him." Custody Order, 2/25/14, at 1.

Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), after which the trial court issued an Opinion.

On appeal, Mother presents the following issue for our review:

Whether the award of [] primary custody to Father with a provision that he can delegate his custody to [Paternal G]randparents[,] when the [trial] court has specifically found that [Paternal G]randparents have not overcome [Mother and Father's] *prima facie* right to primary custody[,] is [an] abuse of discretion?

Mother's Brief at 6.

Mother argues that Father is largely unavailable to care for Child (and thus not an appropriate resource for primary physical custody), and that the trial court improperly permitted him to delegate his physical custody to Paternal Grandparents during his workweek. *Id.* at 9, 12; *see also id.* at 9 (wherein Mother asserts that, under the Custody Order, Father essentially does not exercise physical custody of Child on Monday through Saturday morning, due to Father's work schedule and living with his girlfriend). Mother points out that the trial court found that neither parent was unfit to care for Child. *Id.* at 9, 11. Mother further argues that Paternal Grandparents are "third parties" (with respect to Child's parents) and only legally entitled to *partial* physical custody, not primary custody, which, Mother asserts, the Custody Order effectively awarded to Paternal Grandparents, not Father. *Id.* at 9-12. Accordingly, Mother requests this Court to vacate the Custody Order and remand the matter to the trial court

J-S46031-14

to enter an order awarding her primary physical custody, in Conneaut Lake,

Pennsylvania. *Id.* at 13.

> Our standard of review is as follows:
>
> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

With any custody case, the paramount concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338. Section 5338 of Child Custody Act ("the Act")[3] provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. *Id.* § 5338. Section 5328(a) of the Act sets forth sixteen best interest factors (collectively referred to as "the best interest factors") that a trial court must consider when awarding custody. *Id.* § 5328(a).

---

[3] *See* 23 Pa.C.S.A. §§ 5321 to 5340; *see also C.R.F.*, 45 A.3d at 445 (stating that, where, as here, the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

-5-

Further, where, as here, a request for relocation of the subject child is involved, the trial court must consider the ten relocation factors (collectively referred to as "the relocation factors") set forth in section 5337(h) of the Act. *Id.* § 5337(h); *see also E.D. v. M.P.*, 33 A.3d 73, 81 (Pa. Super. 2011) (stating that "Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child." (emphasis in original)). Moreover, "[w]hen a custody dispute involves a request by a party to relocate, … there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis." *C.M.K. v. K.E.M.*, 45 A.3d 417, 421 (Pa. Super. 2012) (citation and quotation marks omitted).

Initially, we must address whether Paternal Grandparents have standing to sue in their own right in this case.[4]

Section 5324 of the Act provides the following with regard to standing to file a custody action:

> **§ 5324.  Standing for any form of physical custody or legal custody**
>
> The following individuals may file an action under this chapter for any form of physical custody or legal custody:

---

[4] Although the trial court indicates in its Opinion that Mother does not challenge Paternal Grandparents' standing, our review discloses that she did, in fact, raise this issue, as she argues, and the trial court concedes, that Paternal Grandparents are "third parties," and do not have the same entitlement to primary physical custody of Child as Father or Mother, as Child's parents. *See* Mother's Brief at 9; Trial Court Opinion, 4/15/14, at 6.

(1) A parent of the child.

(2) A person who stands *in loco parentis* to the child.

(3) A grandparent of the child who is not *in loco parentis* to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume responsibility for the child; and

(iii) when one of the following conditions is met:

(A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S.A. § 5324. Here, it is undisputed that Paternal Grandparents were not eligible to seek primary physical custody in their own right, as they cannot satisfy any of the subsections of section 5324.

However, section 5325 of the Act provides, in relevant part, as follows:

In addition to situations set forth in section 5324 …, grandparents and great-grandparents may file an action

under this chapter for partial physical custody or supervised physical custody in the following situations:

* * *

(2) where the parents of the child have been separated for a period of at least six months or have commenced and continued a proceeding to dissolve their marriage[.]

23 Pa.C.S.A. § 5325(2); *see also Hill v. Divecchio*, 625 A.2d 642, 645-48 (Pa. Super. 1993) (addressing whether grandparents had standing to sue for partial physical custody in their own right under section 5312 of the former Grandparents' Visitation Act, 23 Pa.C.S.A. § 5312 (*i.e.*, the predecessor statute to the standing provisions set forth at sections 5324 and 5325)).

In the instant case, Child's parents have been separated for a period of at least six months, and they were never married. Thus, we determine that the trial court properly granted Paternal Grandparents standing to seek partial physical custody pursuant to 23 Pa.C.S.A. § 5325(2).

Mother argues that Paternal Grandparents have not met their burden to overcome a parent's right to *prima facie* custody when Mother, as a parent, is ready, willing, and able to assume custody. **See** Brief for Mother at 10-12. Mother's claim is based on the well-established legal principal that natural parents have a rebuttable presumption against third parties, including grandparents, in custody disputes. **See** 23 Pa.C.S.A. § 5327(b) (providing that "[i]n any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that

custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence."); *see also V.B. v. J.E.B.*, 55 A.3d 1193, 1199 (Pa. Super. 2012) (discussing the presumption in section 5327(b) and stating that "these principles do not preclude an award of custody to a non-parent. Rather they simply instruct the [trial] judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent's burden is heavy." (citation omitted)).

In its Opinion, the trial court found that Paternal Grandparents had met this heightened burden, and discussed its reasons for entering the Custody Order, stating as follows:

> In this case, the dispute was not between the parents on one side and the grandparents on the other. Father and [P]aternal Grandparents [jointly] filed their Complaint against Mother, and[,] thus, there was a parent on either side. This [c]ourt awarded primary physical custody to *Father*, and granted [P]aternal [G]randparents partial physical custody during the periods of Father's custody. This [c]ourt is cognizant of the realities of Father's work schedule, and set out those concerns in detail on the record. Mother focuses on the fact that, because she is "available" to exercise custody, she should be granted primary physical custody over Father, and over any third party.
>
> This [c]ourt stands by its findings that granting Mother primary physical custody is not in [C]hild's best interests. …
>
> * * *
>
> This [c]ourt cannot simply ignore the bigger picture because of Father's current work schedule. Father has not sought to neglect his parental responsibilities due to any kind of personal selfishness. This [c]ourt found no evidence

demonstrating that Father's decisions regarding [C]hild's living arrangements were made for reasons other than what was in [C]hild's best interests at this time. This [c]ourt clearly stated on the record that Father will not be permitted to simply coast along, making no effort to obtain a different work schedule, one that would permit him to spend time with [C]hild weekly. This [c]ourt was required to render a determination regarding [C]hild's best interests and his permanent welfare, "not in relation to a fixed standard, but by determining what is best for the child under all the circumstances." [***Commonwealth ex rel. Batturs v. Batturs***, 60 A.2d 610, 611 (Pa. Super. 1948).] This [c]ourt examined the entirely of the circumstances, taking into account *all* of the relevant factors of [C]hild's life, including where [C]hild has resided and who [C]hild's caretakers have been, and found that awarding Father primary physical custody would best serve to promote [C]hild's best interests.

Trial Court Opinion, 4/15/14, at 7, 9 (emphasis in original).

However, this case also involves considerations of relocation.[5] While the trial court considered and discussed the sixteen section 5328(a) best interest factors on the record, it did not consider the ten relocation factors on the record, nor did it set forth any findings regarding section 5337(h) in its Pa.R.A.P. 1925(a) Opinion.

Regarding a trial court's obligation to consider the relocation factors in cases involving proposed relocation, this Court has stated as follows:

*Section 5337(h) requires courts to consider all relocation factors. The record must be clear on appeal that the trial court considered all the factors.*

---

[5] As discussed above, Mother sought primary physical custody and to relocate Child to live with her and her boyfriend in Conneaut Lake. Father also sought primary physical custody; however, primary physical custody under an arrangement whereby Child would not relocate from Paternal Grandparents' home is not primary physical custody. Primary physical custody for Father would involve a relocation of Child to Father's residence in Shippensburg, which he shares with his girlfriend and their daughter.

> Section 5323(d) [of the Act] provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). … Section 5323(d) applies to cases involving custody and relocation.

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014) (emphasis added; citations to case law and quotation marks omitted).

We determine that the trial court committed an error of law when it failed to consider the section 5337(h) relocation factors, either on the record or in a written opinion or order. *See E.D.*, 33 A.3d at 81, 82 (vacating the custody order and remanding to the trial court where the court had failed to consider the relocation factors in a case involving relocation, and stating that "[e]ffective appellate review requires the trial court to consider each of the factors set forth in section 5337(h), and to state both its reasoning and conclusions on the record for our review."); *see also A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013) (stating that the trial court must consider all ten relocation factors, and all sixteen best interest factors, when making a decision on relocation that also involves a custody decision). Therefore, we must remand the matter to the trial court for further proceedings and a consideration of the relocation factors. *See E.D.*, 33 A.3d at 82; *see also A.V.*, 87 A.3d at 825. On remand, the trial court should consider all of the

best interest and relocation factors, and set forth its analysis in a written opinion.[6]

Finally, Mother argues that the Custody Order is improper in that it essentially

> awarded primary physical custody of [C]hild to [] Paternal Grandparents[,] while couching it [the award] in language that they were actually awarded partial physical custody. This was done despite the [trial] court's specific finding[] that Paternal Grandparents were only entitled to partial physical custody under [the Act] and under the facts of this case.

Mother's Brief at 10. We agree.

As stated above, during Father's workweek, Child resides with Paternal Grandparents (while Father resides with his girlfriend in Shippensburg), and Paternal Grandparents are not entitled to an award of primary physical custody. **See** 23 Pa.C.S.A. § 5324. Accordingly, on remand, we instruct the trial court that it may not award primary physical custody to Father and, at the same time, have Child reside at the home of Paternal Grandparents, if that is not where Father is going to be residing during his workweek.

Based upon the foregoing, we vacate the Custody Order and remand the case to the trial court for further proceedings and the entry of a new

---

[6] Moreover, on remand, the trial court should ensure that it does not consider any inappropriate factual matter developed by Paternal Grandmother questioning witnesses or making objections at the custody trial, as she was not able to serve as an attorney for any of the *pro se* plaintiffs but herself. This Court has observed that the right to self-representation in a civil case does not give leave for the party to fail to comply with rules of procedure and substantive law. **Winpenny v. Winpenny**, 775 A.2d 815, 817 n.1 (Pa. Super. 2001).

custody order and a supplemental Pa.R.A.P. 1925(a) Opinion, consistent with this Memorandum.

Order vacated. Case remanded for further proceedings. Superior Court jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2014